IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

CAROLYN S. MITCHELL,

        Plaintiff,

v.

POSTMASTER GENERAL, LOUIS DEJOY,

        Defendant.

NO. 1:13-CV-00718-MAC-ZJH

## REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and has been referred to the undersigned for pretrial management. Pending before the court is Defendant Postmaster General, Louis DeJoy's[1] ("Postmaster") *Motion to Dismiss or Alternatively, Motion for Summary Judgment* ("Motion" or "Motion for Summary Judgment"). Doc. No. 119. For the reasons stated below, the undersigned recommends granting the Postmaster's motion.

Mitchell, an African-American female born in 1960, has worked for the United States Postal Service ("USPS") since September 1980.[2] Doc. No. 182, *Sapp v. Potter*, No. 1:07-CV-650, at *2 (E.D. Tex. July 26, 2012); *see also* Doc. No. 119 at 2, ¶¶ 1- 4. Mitchell, who previously identified as Carolyn Sapp, consistently worked for the USPS until August 2001, when she

---

[1] "[T]he head of the department, agency, or unit . . . shall be the defendant in a Title VII action brought by a federal employee." 42 U.S.C. § 2000e-16(c) (2009). Additionally, "[a]n action does not abate when a public officer who is a party in an official capacity . . . resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." FED. R. CIV. P. 26(d). U.S. Postmaster General Louis DeJoy thereby succeeds former Postmaster General Patrick Donahoe, the original defendant, in this case. *Id.*; Doc. No. 1.

[2] Many of the facts of the instant litigation overlap with Mitchell's previous lawsuit against USPS, filed on September 24, 2007. *See* Doc. No. 1, *Carolyn S. Sapp v. John Potter*, No. 1:07-CV-650. When referring to background information regarding Mitchell's employment, the undersigned will refer to the undersigned's own July 26, 2012 *Report and Recommendation* (Doc. No. 182), as well as United States Magistrate Judge Earl Hines's February 17, 2010 *Report and Recommendation* (Doc. No. 55) from Mitchell's previous 2007 litigation in this court. *Id.*

reported experiencing several overlapping mental health issues.  Doc. No. 55, *Sapp v. Porter*, No. 1:07-CV-650, at *2.  Thereafter, Mitchell exhausted her leave for over one year, resulting in the USPS placing her on a Leave Without Pay ("LWOP") status from December 2002 until her separation in May 2008 because of a Reduction-in-Force ("RIF").  *Id.* at 2-3.  Mitchell did not work for the USPS between 2008 and 2011.  In the summer of 2011, Mitchell applied to the USPS for a position as a Postal Support Employee ("PSE") Clerk at eight different Texas locations.  Doc. No. 97 at 2; Doc. No. 119 at 3-9.  The instant lawsuit, and subsequent decade of litigation, arises out of the USPS's failure to hire Mitchell at seven different postal locations, as well as issues arising out of Mitchell's employment at the Euless, Texas location.  *See* Doc. No. 97 at 2-8.

Because Mitchell is proceeding *pro se*, her pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" and, as such, must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002).  Mitchell exhausted her administrative appeals before the Equal Employment Opportunity ("EEO") Administrative Judges, as well as the Office of Federal Operations ("OFO").  During this litigation, Mitchell filed a total of three complaints (Doc. Nos. 1, 40, 48) followed by a series of miscellaneous complaints (Doc. Nos. 73-76), each with thousands of pages of attachments.  E.g., Doc. Nos. 78-82.  After the Postmaster moved to strike (Doc. No. 86) these miscellaneous complaints, on November 18, 2020, the undersigned held that it will construe Mitchell's *Response to Motion to Strike* (Doc. No. 97) as a *Third Amended Complaint* [hereafter "TAC" or "Complaint"].  Doc. No. 100 at 3.

I. **Factual and Procedural History**

The instant case arises out of the period after the USPS placed Mitchell on LWOP status, between 2002 and 2008.  Doc. No. 97 at 2.  In 2011, Mitchell applied for a Postal Support Employee ("PSE") Clerk position at eight different the USPS locations.  *See* Ex. A, Doc. No. 119-1.  After the USPS failed to hire Mitchell at seven of those locations, the Euless location finally hired Mitchell.  Doc. No. 119 at 9.  Mitchell first alleges race, sex, age, and disability discrimination for the USPS's failure to hire her at seven of those locations.  Moreover, during her employment at the Euless location, Mitchell alleges the USPS retaliated against her, and discriminated against her on the basis of race, sex, age, and disability when her employer: failed to convert her to career status pursuant to an Arbitration Settlement; placed her in involuntary LWOP status between 2002 and 2008; "den[ied] full retirement annuity from 1980 t[o] present"; failed to provide "correct pay and benefits"; and carried out a host of miscellaneous actions against her, such as removing forms from her personnel file, placing her on a contractually-mandated five-day break, paying her late, suspending her for fourteen days, and more.  *See* Doc. No. 97 at 2-9.

For greater ease and specificity as to the facts underlying each cause of action, the undersigned will address Mitchell's allegations according to their parallel administrative EEO proceedings, taking each in turn.

A.  EEO # 46-760-0114-11 ("114-11")

On September 1, 2011, Mitchell initiated the EEO process for complaint #114-11.  Ex. A, Att. 12, Doc. No. 119-1.  This EEO complaint, and the following allegations before this court, stem from the USPS's failure to hire Mitchell at seven different locations for the position as a Postal Support Employee ("PSE") Clerk.  *Id.*  Specifically, Mitchell complains that hiring officers at seven of the locations failed to hire her because they discriminated against her due to her race,

3

sex, age, and disability, and retaliated against her for filing a previous EEO complaint. Each cause of action therefore arises under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, and the Age Discrimination in Employment Act ("ADEA").

### i.    *Weatherford Post Office*

On June 23, 2011, Mitchell applied for a PSE position with the Weatherford Post Office. Ex. A, Att. 1, Doc. No. 119-1. Donna Huffstuttler, a white woman, who was fifty-years-old at the time, was the hiring official at this location. Ex. A, Att. 2, Doc. No. 119-1 at 2. In her corresponding EEO Investigative Affidavit, Huffstuttler affirmed she did not know Mitchell suffered from any "mental conditions or impairments," nor did she know Mitchell engaged in prior EEO activity. *Id.* at 2-3.

Huffstuttler affirmed she had one position to fill at this location and hired Phillip Hill: a black male "in his late 20s or middle 30s," and a compensable veteran. *Id.* at 3. Huffstuttler stated Mitchell's "race, sex, [and] age" did not factor into her hiring consideration — only that Hill was "a compensable veteran who was higher listed on the register." *Id.*

### ii.    *Fort Worth Post Office*

On July 28, 2011, Mitchell applied for a PSE position with the Fort Worth Post Office. Ex. A, Att. 1, Doc. No. 119-1. Kenneth Ruleas, a Hispanic male, who was about fifty-years-old at the time, was the hiring official at this location. Ex. A, Att. 3, Doc. No. 119-1 at 2. In his corresponding EEO Investigative Affidavit, Ruleas affirmed he did not know Mitchell suffered from any "mental conditions or impairments," nor did he know Mitchell engaged in prior EEO activity. *Id.* at 2-3.

Ruleas affirmed he selected Anthony Acosta for the position because "Mr. Acosta has Veteran preference as a compensable veteran and had the highest score on the hiring list." *Id.* at 3. Ruleas stated Mitchell's "race, sex, [and] age" did not factor into his hiring consideration — he chose Acosta "because a veteran had preference in the hiring process." *Id.*

### iii.    *Burleson Post Office*

On June 23, 2011, Mitchell applied for a PSE position with the Burleson Post Office. Ex. A, Att. 1, Doc. No. 119-1. Michelle Fiegel, a white woman who was about forty-years-old, was the hiring official at this location. Ex. A, Att. 4, Doc. No. 119-1 at 2. In her corresponding EEO Investigative Affidavit, Fiegel affirmed she did not know Mitchell suffered from any "mental conditions or impairments," nor did she know Mitchell engaged in prior EEO activity. *Id.* at 2-3.

Fiegel stated she had one position to be filled at the time and had between fourteen and seventeen applicants for the PSE position. *Id.* at 3. After narrowing the pool of applicants to four or five people, Fiegel affirmed that "[s]everal of the applicants were black and several were white and at least one was Hispanic . . . there were about an equal number of males and females." *Id.* She stated she did not know the ages of any of the applicants.

Ultimately, Fiegel hired Dario Ruvarac, a white male in his forties, after originally selecting two black male veterans that were hired in other locations. *Id.* at 3, 5. Thus, Fiegel stated she hired Dario Ruvarac because he was "the best applicant," *id.* at 3, and "was the next eligible applicant on the hiring list who had responded to the District's request." *Id.* at 5. Mitchell, however, was placed "in the bottom half of the applicants on the register." *Id.* at 3. Fiegel stated Mitchell's "race, sex, [and] age" did not factor into her hiring consideration. *Id.* at 3-4.

### iv.    *Village Mills Post Office*

On July 6, 2011, Mitchell applied for a PSE position with the Village Mills Post Office. Ex. A, Att. 1, Doc. No. 119-1.  Elizabeth Epperson, a white woman who was about sixty-one-years-old at the time, was the hiring official at this location.  Ex. A, Att. 5, Doc. No. 119-1 at 2. In her corresponding EEO Investigative Affidavit, Epperson affirmed she did not know Mitchell suffered from any "mental conditions or impairments."  *Id.* at 2.

During this interview process, Epperson questioned Mitchell about how she would handle an EEO complaint "because [Mitchell] would have to be trained on EEO for [Epperson's] office and [Epperson] needed to know how much training she needed."  *Id.* at 3.  Epperson stated that "[d]uring the questioning[,] [Mitchell] volunteered information and stated she had previously filed an EEO complaint. [Epperson] did not ask her if she had previously filed a complaint," and Epperson affirmed that Mitchell's prior EEO activity was not a factor of consideration for failing to hire her.  *Id.*

Epperson had to fill one position at this location, and ultimately hired Anna Self, a white woman who was sixty-years-old at the time, because "Ms. Self was [Epperson's] Postmaster Relief for six years and she knew the office and procedures. She was the best qualified."  *Id.* at 4.  Simply put, Epperson affirmed she did not hire Mitchell because Mitchell "was not as qualified as Ms. Self."  *Id.*  Epperson stated Mitchell's "race, sex, [and] age" did not factor into her hiring consideration. *Id.* at 4.

### v.    *Spurger Post Office*

Also on July 6, 2011, Mitchell applied for a PSE position with the Spurger Post Office. Ex. A, Att. 1, Doc. No. 119-1.  John Vandenberg, a white male who was fifty-five-years-old at the time, was the hiring official at this location.  Ex. A, Att. 6, Doc. No. 119-1 at 2.  In his

corresponding EEO Investigative Affidavit, Vandenberg affirmed he did not know Mitchell suffered from any "mental conditions or impairments," nor did he know Mitchell engaged in prior EEO activity. *Id.* at 2-3. Indeed, Vandenberg affirmed that "[d]uring the interview process, there were not any questions asked of Ms. Mitchell or any of the other applicants pertaining to EEO issues." *Id.* at 3.

Vandenberg had one vacancy to fill at this location for this position. Ultimately, Vandenberg selected Crystal Ivey[3], a white woman who was about fifty-years-old. *Id.* Vandenberg affirmed he selected Ivey for the position because she answered questions about "handling money, making bank deposits and dealing with customers" better than any other candidate, including "three white males and one white female who were also not selected." *Id.* Additionally, Vandenberg stated that Ivey's "most recent work history and familiarity with the customers also were taken in account. This has proven to be MOST valuable especially with so many coming and going Box Customers." *Id.* at 5 (emphasis in original).

Vandenberg stated Mitchell's "race, sex, [and] age" did not factor into his hiring consideration. *Id.* at 4. Regarding Mitchell's application, Vandenberg became "aware of [Mitchell's] past attendance issues," and in sum, did not choose Mitchell because "based on [Vandenberg's] assessment, she was not the best applicant." *Id.*

### vi.    *Hull Post Office*

Also on July 6, 2011, Mitchell applied for a PSE position with the Hull Post Office. Ex. A, Att. 1, Doc. No. 119-1. Anna Lambert, a Hispanic woman who was almost fifty-seven-years-old at the time, was the hiring official at this location. Ex. A, Att. 8, Doc. No. 119-1 at 2. In her

---

[3] In his Affidavit, Ex. A, Att. 6, Doc. No. 119-1, Vandenberg frequently refers to a "Chrystal Spurlock" instead of "Crystal Ivey." Attached to the Postmaster' motion as Attachment 7, however, is a work history for Ms. Crystal Ivey, showing Ivey is the PSE clerk at the Spurger Post Office. *See* Ex. A, Att. 7, Doc. No. 119-1, at 2. The undersigned will assume Vandenberg is referring to the same person, even though the spelling and last names differ.

corresponding EEO Investigative Affidavit, Lambert affirmed she did not know Mitchell suffered from any "mental conditions or impairments," nor did she know Mitchell engaged in prior EEO activity. *Id.* at 2-3.

Lambert had one vacancy to fill at this location for this position. *Id.* at 3. Lambert originally had nine applicants for the position and narrowed the pool of applicants to five: "one male and four females." *Id.* Ultimately, Lambert hired Lisa Powers, a white, then-fifty-year-old woman, because "Ms. Powers was [Lambert's] Postmaster Relief. She knew the office and all office procedures. She was the best qualified." *Id.*

Lambert stated Mitchell's "race, sex, [and] age" did not factor into her hiring consideration. *Id.* at 4. Regarding Mitchell's application, Lambert did note that Mitchell "had the highest score" on the "register of eligibles [sic]," however still maintained Powers was the best candidate due to her prior work experience as Postmaster Relief. *Id.* at 3.

### vii.    *Hamshire Post Office*

Also on July 6, 2011, Mitchell applied for a PSE position with the Hamshire Post Office. Ex. A, Att. 1, Doc. No. 119-1. Debra Jolivet, a black woman who was fifty-two-years-old at the time, was the hiring official at this location. Ex. A, Att. 9, Doc. No. 119-1 at 2. In her corresponding EEO Investigative Affidavit, Jolivet affirmed she did not know Mitchell suffered from any "mental conditions or impairments," nor did she know Mitchell engaged in prior EEO activity. *Id.* at 2-3.

Jolivet had to fill one position at this location. *Id.* at 3. Jolivet interviewed at least three of the five or six applicants for this position, "and they were all females. To the best of [her] knowledge, two of the three employees were Black." *Id.* She did not know their ages. *Id.*

8

Ultimately, Jolivet hired Julie Adamson for the position, a white female in her early forties, based on guidelines provided from Human Resources in the Houston District. *Id.* Such guidelines require the hiring official give the interviewee "a questionnaire which requires all applicants interviewed to explain how their past work experiences relate to the required experiences for the PSE position, . . . such as Customer Service, Sales, dependability, etc." *Id.* at 5.

Concerning Mitchell's application, Jolivet affirmed that Mitchell stated "she retired." *Id.* at 4. Jolivet apparently felt "a little suspicious" about this response, so she telephoned the Beaumont Plant Manager, Don Hale, who informed Jolivet that Mitchell "was no longer employed" due to "unclear" reasons. *Id.* Jolivet then spoke with Nurse Jennifer Campbell who "said there were possibly some issues pending." *Id.* Jolivet affirmed these issues "did not come into play and . . . [she] was not aware of any medical condition" or prior EEO activity regarding Mitchell. Lastly, Jolivet affirmed that Mitchell's "race, sex, [and] age" did not factor into her hiring consideration. *Id.*

### viii.    *Euless Post Office*

On June 20, 2011, Mitchell applied for a PSE position with the Euless Post Office, where she was hired. Ex. A, Att. 1, Doc. No. 119-1.

USPS Human Resources Specialist Kirby Fagg was responsible for performing administrative duties in onboarding Mitchell to her new role. Ex. A, Att. 10, Doc. No. 119-1 at 3. Such onboarding measures included having Mitchell fill out the Form PS 2489. *Id.* Once Fagg realized Mitchell left a question on the form asking her to indicate if she had any disability, Fagg affirmed he left a post-it note next to the question. *Id.*

All applicants considered for hire at the USPS must additionally pass a required medical assessment. Ex. B, Att. 2, Doc. No. 119-2 at 4. Marcia Johnson, the USPS Occupational Health

Nurse District in the Fort Worth District, was responsible for conducting Mitchell's health assessment.  Ex. A, Att. 11, Doc. No. 119-1 at 1.  An employee who indicates they have a medical condition must then provide documentation addressing the present status of that condition and whether the condition is stable or controlled.  *Id.*; Ex. B, Att. 2, Doc. No. 119-2 at 4.

During Mitchell's medical assessment, Nurse Johnson asked Mitchell if she had ever requested a special assignment because of a medical or psychological condition, and Mitchell responded in the affirmative.  Ex. A, Att. 11, Doc No. 119-1, at 1.  Therefore, Nurse Johnson requested updated medical documentation.  *Id.*  Mitchell, however, delayed providing this information, thereby delaying her start-date and initiation as a PSE Clerk.  On December 11, 2011, Mitchell was officially re-hired as a PSE Clerk at the Euless Post Office.   Ex. C, Att. 5, Doc No. 119-3.

On September 1, 2011, Mitchell initiated pre-complaint counseling with a USPS EEO Counselor, received a Notice of Right to File a formal complaint, and on October 10, 2011, filed a formal EEO Complaint of Discrimination.  Ex. A, Atts. 12-14, Doc. No. 119-1.  Mitchell alleged then, and now, that the USPS discriminated against her because of her race, sex, age, disability status, and retaliated against her for prior EEO activity when: (1) the USPS failed to hire her at seven different locations for a PSE Clerk position; and (2) when the USPS placed her on a medical hold, delaying her start date as a PSE Clerk at the Euless location.  Ex. A, Att. 15, Doc. No. 119-1.

Following a hearing, an administrative judge "[found] that the evidence ha[d] failed to show that the Complainant's race, sex, disability, and/or reprisal were the reasons for her non-selections, or for the delay in her entry in the Euless, Texas position."  Ex. B, Att. 2, Doc. No. 119-2 at 7.  Thus, the EEO dismissed Mitchell's complaint.  *Id.*; Ex. B, Att. 3, Doc. No. 119-2.

Mitchell then appealed to the present court, including this EEO complaint as a basis for her first cause of action. *See* Doc. No. 97 at 2.

      B. <u>EEO # 4G-760-0031-14</u> ("31-14")

On December 23, 2013, Mitchell initiated the EEO process for complaint # 31-14. Ex. C, Att. 6. This EEO complaint arises out of Mitchell's employment at the Euless Post Office, wherein she alleges age discrimination and discriminatory retaliation for prior EEO activity when 399 PSEs were converted to career status except for Mitchell. Doc. No. 97 at 4.[4]

While an employee at the Euless Post Office, the American Postal Workers Union ("APWU") negotiated an Arbitration Settlement, agreeing to convert 399 PSE Clerks to career status on a nationwide basis over a sixty-day period. Ex. B, Att. 2, Doc. No. 119-2, at 5. The USPS Headquarters did not choose the Euless Post Office as an office for such conversions. However, Mitchell alleges the USPS converted ten PSE Clerks at the Fort Worth District to career status, even though they all had less seniority than Mitchell. Doc. No. 97 at 4.

Mitchell therefore brought EEO proceedings alleging the Postmaster discriminated against her because of her age and retaliated against her for prior EEO activity. Ex. C, Atts. 6, 9, Doc. No. 119-3. On January 18, 2014, Mitchell filed a formal complaint of discrimination, and on April 16, 2019, an EEO administrative judge denied her complaint, issuing a summary decision in favor

---

[4] The court notes that several other allegations brought up in the EEO process were subsequently excluded from the face of Mitchell's complaint, in both her Third Amended Complaint (Doc. No. 97), and her original First Amended Complaint (Doc. No. 40). Such allegations include: being moved from window operations, desiring scheme training not provided to PSEs, a small delay in seeing her union representative, alleged denial of leave, allegedly receiving less hours than a colleague, and receiving a PS Form 50 indicating she was not a new hire. *See* Ex. B, Att. 2, Doc. No. 119-2, at 5-6.

For reasons further discussed below, even if the court liberally construed these collateral allegations, they still fail because they are not adverse employment actions. *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 834 (E.D. Tex. 2014) ("[A]dverse employment actions include only ultimate employment decisions," such as "job duties, compensation, or benefits.") (internal citations and quotations omitted). Regarding the portions of this EEO complaint that *do* constitute adverse employment actions, like her other claims, *infra*, Mitchell has provided no evidence that Postmaster's legitimate, nondiscriminatory reasons are pretextual. *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001) ("[T]he plaintiff must produce substantial evidence of pretext.").

of the USPS.  Ex. C, Att. 10, Doc. No. 119-3; Ex. D, Atts. 1, 2, Doc. No. 119-2.  On May 23, 2019, the EEOC entered a Notice of Final Action, affirming the administrative judge's decision.  Ex. D, Att. 4, Doc. No. 119-4.

On June 26, 2019, Mitchell appealed to the Office of Federal Operations ("OFO"), and on February 28, 2020, the OFO affirmed the administrative judge's decision.  Ex. D, Att. 6, Doc. No. 119-4, at 3.  Mitchell then consolidated this EEO action with the present litigation before this court. Doc. Nos. 70, 97.

C.  EEO # 4G-760-0013-15 ("13-15")

On November 14, 2014, Mitchell initiated the EEO process for complaint # 13-15.  Ex. E, Att. 5, Doc. No. 119-5.  This EEO complaint arises out of allegations that the USPS discriminated against Mitchell because of her race, sex, mental disability, age, and discriminatorily retaliated against her for prior EEO activity when the USPS: (1) removed a "473 Battery Test and Physical Requirement" from Mitchell's "eOPF" personnel file; (2) failed to convert her to career status; and (3) failed to issue her check for hours worked from November 25, 2014 to December 8, 2014. Doc. No. 97 at 4.[5]

On February 21, 2015, Mitchell filed a formal complaint with the EEOC, and on April 16, 2019, an EEOC administrative judge issued a Notice of Intent to Issue Summary Judgment.  Ex. E, Atts. 7, 9, Doc. No. 119-5.  On May 10, 2019, an EEOC administrative judge issued a summary decision in favor of the USPS, and judgment was entered for the USPS on May 15, 2019.  *Id.*, Atts. 9, 10.  On May 23, 2019, EEOC entered a Notice of Final Action, affirming the administrative judge's decision.  *Id.*, Att. 11.

---

[5] Here too, Mitchell has allegations in the underlying EEO complaint that did not subsequently appear in the corresponding EEO section of her TAC.  However, as these allegations appear elsewhere in Mitchell's TAC, the undersigned will address them separately.

On June 26, 2019, Mitchell appealed to the OFO, *id.*, Att. 12, and on February 28, 2020, the OFO affirmed the administrative judge's decision. *Id.*, Att. 13. On May 26, 2020, Mitchell consolidated complaint # 13-15 with her present complaint. Doc. Nos. 70, 97.

D. EEO Complaint #4G-760-0023-16 ("23-16")

On December 9, 2015, Mitchell initiated the EEO process for complaint #23-16. Ex. F, Att. 2, Doc. No. 119-6. This EEO complaint arises out of allegations that the USPS discriminated against Mitchell because of her race and sex and retaliated against her for prior EEO activity when the USPS: (1) failed to convert her to career status; and (2) failed to pay her on December 16, 2015.[6]

On January 29, 2016, the National EEO Investigative Service's Office dismissed Mitchell's EEO complaint for failure to state a claim. Ex. F, Att. 5, Doc. No. 119-6. On March 1, 2016, Mitchell appealed to the OFO, *id.*, Att. 6, and on June 3, 2016, the OFO affirmed the dismissal of Mitchell's complaint. *Id.*, Att. 7. On July 5, 2016, Mitchell filed a Request for Reconsideration of the OFO's decision, *id.*, Att. 8, and on September 16, 2016, the OFO denied Mitchell's request. *Id.*, Att. 9.

On December 15, 2016, Mitchell consolidated complaint #23-16 with the present complaint. Doc. Nos. 33, 34, 97.

E. EEO Complaint #4G-760-0039-16 ("39-16")

On December 22, 2015, Mitchell initiated the EEO process for complaint #39-16. This EEO complaint arises out of allegations that the USPS discriminated against Mitchell because of her race and sex, and retaliated against her for prior EEO activity when the USPS: (1) failed to

---

[6] In the EEO proceedings below, Mitchell also alleged the USPS removed personnel action forms from her eOPF file and changed the disability code on her PS Form 50. These allegations are subsequently excluded from this portion of Mitchell's TAC, but appear in other portions of the TAC, and will therefore be considered by the undersigned.

convert her to career status; (2) failed to pay her back pay and on time; (3) failed to provide Mitchell the correct pay and benefits; (4) changed her disability code on her PS Form 50; (5) processed her PS Form 50 late; and (6) placed her in involuntary LWOP status on February 6, 2016. Ex. H, Att. 5, Doc. No. 119-8.

On July 5, 2016, Mitchell filed a second amendment to her complaint, *id.*, Att. 8, and on July 19, 2016, the EEO accepted the second amendment, adding claims that: (1) Mitchell was given a fourteen-day suspension after refusing to sign the attendance review to an Investigative Interview; and (2) the USPS denied her request for a Change of Schedule. *Id.*, Att. 9; Doc. No. 97 at 7.

On April 18, 2019, an EEO administrative judge issued a Notice of Intent to Issue Summary Judgment Decision, Ex. H, Att. 10, Doc. No. 119-8, and on May 10, 2019, an administrative judge issued a summary decision in favor of the USPS. *Id.*, Att. 11. On May 23, 2019, the EEO entered a Notice of Final Action affirming the administrative judge's decision, *id.*, Att. 12, and on June 26, 2019, Mitchell appealed to the OFO. *Id.*, Att. 13. On February 28, 2020, the OFO affirmed the Notice of Final Action, and on May 26, 2020, Mitchell consolidated this EEO complaint with her present complaint before this court. Doc. No. 70; Doc. No. 97.

    F.   <u>EEO Complaint #4G-760-0012-17 ("12-17")</u>

On November 23, 2016, Mitchell initiated the EEO process for complaint #12-17. Ex. I, Att. 2, Doc. No. 119-9. This EEO complaint arises out of allegations that the USPS retaliated against Mitchell for prior EEO activity when the USPS: (1) processed a PS Form 50/RTR that failed to correct her Leave Computation Date ("LCD"); (2) processed a PS Form 50/RTR that failed to correct her Retirement Computation Date ("RCD"); and (3) processed a PS Form 50/RTR

14

that failed to correct her LWOP status for the period between 2002 to 2008.  Doc. No. 97 at 8; Ex. I, Att. 4, Doc. No. 119-9.

On April 18, 2019, an EEOC administrative judge issued a Notice of Intent to Issue Dismissal, or, Alternatively, Summary Judgment Decision, Ex. I, Att. 5, Doc. No. 119-9, and on May 10, 2019, an administrative judge entered a summary decision in favor of the USPS.  *Id.*  On June 26, 2019, Mitchell appealed to the OFO, *id.*, Att. 8, and on February 28, 2020, the OFO affirmed the administrative judge's decision.

On May 26, 2020, Mitchell consolidated complaint #12-17 with the present complaint before this court.  Doc. No. 70.

G.  EEO Complaint #E4G-760-0023-17 ("23-17")

On January 23, 2017, Mitchell initiated the EEO process for complaint #23-17.  Ex. J, Att. 2, Doc. No. 119-10.  This EEO complaint arises out of allegations that the USPS retaliated against Mitchell for prior EEO activity when the USPS: (1) processed a PS Form 50/RTR that failed to correct her LCD and RCD; and (2) processed a PS Form 50/RTR that failed to correct her LWOP status for the period between 2002 and 2008.[7]

On March 24, 2017, the National EEO Investigative Service's Office dismissed Mitchell's complaint because the first two issues had already been decided in two prior complaints, and the last issue was untimely.  Ex. J, Att. 5, Doc. No. 119-10.  On April 10, 2017, Mitchell appealed to the OFO, *id.*, Att. 6, and on July 19, 2017, the OFO affirmed the dismissal of Mitchell's complaint. *Id.*, Att. 7.  On August 14, 2017, Mitchell filed a Request for Reconsideration, *id.*, Att. 8, and on January 5, 2018, the OFO denied Mitchell's request.  *Id.*, Att. 9.

___
[7] In her EEO proceeding, Mitchell also complained about her two-week suspension, however, this was missing from her TAC.  Regardless, the undersigned will consider this allegation, as it is mentioned elsewhere in Mitchell's TAC.  Doc. No. 97 at 7.

On March 27, 2018, Mitchell filed a Second Amended Complaint, including complaint #23-17. Doc. No. 48; *see also* Doc. No. 97 at 3 (Third Amended Complaint).

On April 15, 2022, the Postmaster filed the instant *Motion for Summary Judgment*. Doc. No. 119. In the instant motion, the Postmaster moves to dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1); dismiss this case for failure to state a claim under Rule 12(b)(6); and moves for summary judgment under Rule 56(a). *Id.* at 19-22. On April 29, 2022, Mitchell filed a *Motion Request Trial by Jury* ("Response") (Doc. No. 124). The undersigned will review each parties' arguments below.

## II. <u>Legal Standards</u>

### A. <u>Rule 12(b)(1)</u>

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject-matter jurisdiction of the federal district court. Federal courts are courts of limited jurisdiction, meaning they possess only the "power authorized by [the] Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008). Specifically, "[a] Rule 12(b)(1) motion should be granted only 'if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.'" *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009).

"Standing is a component of subject matter jurisdiction, and it is properly raised by a motion to dismiss under Rule 12(b)(1)." *Consumer Data Indus. Ass'n v. Tex. through Paxton*, 564

F. Supp. 3d 506, 512 (W.D. Tex. 2021) (citing *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006) and *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016)); *Isbell v. DM Records, Inc.*, 591 F. Supp. 2d 871, 874 (E.D. Tex. 2008) ("When a plaintiff lacks standing to sue in federal court, it is appropriate for the court to dismiss the action pursuant to Rule 12(b)(1).").

### B.  Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint must include "sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Factual allegations need only "be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

### C.  Rule 56(a)

Summary judgment shall be rendered when the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is material when it is relevant or necessary to the ultimate outcome of the case.  *Id.*  The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute.

*See Celotex Corp.*, 477 U.S. at 323; *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 433 (5th Cir. 2005).  The court resolves any doubts and draws all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009).

The movant must support its assertion by "citing to particular parts or materials in the record . . . showing that the materials cited do not establish the . . . presence of a genuine dispute, or [showing] that the adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56 (c)(1)(A)-(B).  "[T]he court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255.

If the movant satisfies its burden, the burden then shifts to the nonmoving party to show that specific facts exist over which there is a genuine dispute or to rebut the charge that the movant is entitled to judgment as a matter of law.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex,* 477 U.S. at 325).  Like the movant, the nonmovant must satisfy its burden through specific citations to the summary judgment evidence.  *See* FED. R. CIV. P. 56(c)(1); *Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).  "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)) (internal quotations omitted).

Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).  As a result, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there

is no genuine issue for trial." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012)

(quoting *Harvill v. Westward Commc'ns, LLC, et al.*, 433 F.3d 428, 433 (5th Cir. 2005)). "Only

disputes over facts that might affect the outcome of the suit under the governing laws will properly

preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the nonmoving party

fails to make a showing sufficient to establish the existence of an element essential to its case and

on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*,

477 U.S. at 322.

## III.   Discussion

As several of Mitchell's EEO complaints overlap with each other and repeat in multiple

complaints, and multiple parts of the TAC, the undersigned will discuss each of Mitchell's

allegations separately, rather than according to their assigned EEO proceeding and complaint

number.

### A.   Conversion to Career Employee Status

In multiple places of Mitchell's EEO proceedings, and again before this court, Mitchell

complains about an APWU negotiated agreement with the USPS to convert 399 employees to

career status, whereby Mitchell was not chosen for career conversion. *See* Doc. No. 97 at 2-3

(citing EEO Complaint #23-16), 4 (citing EEO Complaints #31-14 & #13-15), 5 (citing EEO

Complaint # 39-16).

According to an attached Affidavit by Cindy Muckensturm, the District Complement

Coordinator for the Forth Worth District, the APWU and the USPS agreed to convert 399 PSEs to

full-time career positions over the course of sixty-days, taking place nationwide. *See* Ex. C, Att.

1, Doc. No. 119-3 at 3. However, the USPS Headquarters decided not to convert *any* PSE to career

status at the Euless Post Office, including Mitchell. *Id.*; *see also* Ex. C, Att. 3, Doc. No. 119-3,

¶ 67.  Headquarters makes their decisions on which offices to convert PSEs to career status based on: (1) office staffing; (2) earned hours; (3) productivity levels; and (4) whether the office has submitted a request to convert to the District Complement Committee.  Ex. C, Att. 1, Doc. No. 119-3 at 3.  This request must then be approved by a separate committee, and then by Headquarters. *Id.*  Thus, this Arbitration Agreement resulted in no Euless PSE Clerk converted to career status. Indeed, Mitchell agrees that no PSE in her office converted to career status.  *See* Ex. E, Att. 2, Doc. No. 119-3, ¶ 75; Doc. No. 97 at 4 (citing EEO Complaint #31-14).

Mitchell, however, alleges that the USPS discriminated against her because of her race, sex, disability, and age, and retaliated against her for prior EEO activity when it failed to convert her to career status.  *See* Doc. No. 97 at 2-5.

In its motion, the Postmaster moves to dismiss this allegation of Mitchell's complaint under Federal Rule 12(b)(1) for lack of subject-matter jurisdiction.  Doc. No. 119 at 35-37; FED. R. CIV. P. 12(b)(1).  As the Fifth Circuit has admonished that "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits," the undersigned will address this first.

    *i.*   <u>Standing</u>

All EEO proceedings below that reviewed this allegation dismissed Mitchell's discrimination complaint.  *See* EEO Complaints #23-16, #31-14, #13-15, # 39-16.  However, on January 29, 2016, an EEO Services Analyst with the National EEO Investigative Services Office ("NEEOISO") dismissed Mitchell's EEO complaint #23-16 for seeking "collateral enforcement of a grievance decision through the EEO process."  Ex. F, Att. 5, Doc. No. 119-6, at 2.  In this dismissal, the Analyst concluded that her career conversion claim was "outside the jurisdiction of

the EEO Commission," and was instead, a "collateral attack on an arbitration decision," to which the Commission did not have authority to enforce.  *Id.*

In its motion, the Postmaster moves to dismiss this claim for lack of subject-matter jurisdiction on similar grounds.  Doc. No. 119 at 36.  According to the Postmaster, Mitchell is an aggrieved employee challenging the Memorandum of Understanding ("MOU") between the USPS and APWU, which is subject to the USPS's collective bargaining agreement.  *Id.* at 35-36.  Thus, the USPS's Collective Bargaining Agreement ("CBA") provides the exclusive remedy for such a grievance through *arbitration*, not EEOC proceedings.  *Id.*  The Postmaster therefore cites to the "plain language of the [CBA]," which "establishes a mandatory and binding grievance and arbitration procedure and gives the union the exclusive right to pursue claims on behalf of aggrieved employees."  *Id.* at 37.  As Mitchell failed to initiate this arbitration process, the Postmaster contends "Mitchell lacks standing to enforce an MOU . . . or to enforce an Arbitration Agreement."  *Id.*

Had Mitchell brought this cause of action under the USPS's CBA, the undersigned would agree with the Postmaster.

The Fifth Circuit has held that "an aggrieved worker whose employment is governed by such an agreement normally lacks standing independently to initiate grievance procedures, to sue for breach of the collective bargaining agreement, or to attack in court the results of the grievance process."  *McNair v. U.S. Postal Serv.*, 768 F.2d 730, 735 (5th Cir. 1985) (citation omitted).  The only exception in those instances is where the union has breached its duty of fair representation.  *Id.*

Here, the Postmaster relies on the Southern District of Texas case *Ross v. Runyon*, which adopted the *McNair* standard that when "a plaintiff's claims are based . . . upon breach of a

collective bargaining agreement, [she] is bound by the terms of that agreement which govern the manner in which the contractual rights may be enforced." *Ross v. Runyon*, 858 F. Supp. 630, 634 (S.D. Tex. 1994). This case is inapposite, however — Mitchell's cause of action is *clearly* Title VII, the ADA, the ADEA, and the Rehabilitation Act. *See generally* Doc. No. 97. Even the section of Mitchell's complaint that cites to the EEO Services Analyst's decision, complaint #23-16, raises Title VII on the face of her complaint. *See id.* at 2. A "liberal construction" of Mitchell's former complaints (e.g., Doc. No. 48) and *Response* (Doc. No. 124) again raises this statute as the basis for her claims.

This District has long held that a "CBA's mandatory grievance-arbitration procedure does not cover Title VII claims," and that "even if the CBA did cover Title VII claims, this court conclude[d] such an agreement is invalid; a union may not waive an employee's right under Title VII to bring a claim in federal court." *Bush v. Carrier Air Conditioning*, 940 F. Supp. 1040, 1043 (E.D. Tex. 1996). Further, such a holding complies with the Supreme Court's decision in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), whereby the Court struck down a CBA provision requiring disputes be submitted to a multi-phased grievance-arbitration procedure. In that opinion, the Court held that "rights conferred [from Title VII] can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII." *Id.* at 51.

As such, both the NEEOISO and the Postmaster are incorrect: APWU's CBA does not preclude Mitchell from seeking recovery for her Title VII claims in federal court. This court is the proper forum for bringing such a claim, and as she has properly exhausted her administrative remedies below, Mitchell has standing to pursue this claim.

ii.    _Discrimination Claims_

Turning to the actual merits of Mitchell's allegations for failure to convert her to career status, however, Mitchell's claims must fail.

In her TAC, Mitchell alleges this claim in multiple places, each with different causes of action. Doc. No. 97 at 2-5. Construing Mitchell's TAC liberally, the undersigned will discuss this cause of action pursuant to its broadest swath of allegations according to EEO Complaint #13-15: that by failing to convert Mitchell to career status, the USPS discriminated against her because of her race, sex, mental disability, and age, and retaliated against her for prior EEO activity. Doc. No. 97 at 4.

a.    Race and Sex Discrimination

First, Mitchell brings claims under Title VII, 42 U.S.C. § 2000e-2, alleging that the USPS discriminated against her because of her race and sex when it failed to convert her to career status. Mitchell has exhausted her administrative remedies, and thus may prove a claim of intentional discrimination either by direct or circumstantial evidence. _McCoy v. City of Shreveport_, 492 F.3d 551, 556 (5th Cir. 2007). Because direct evidence of discriminatory intent is "rare," Title VII plaintiffs usually must utilize the _McDonnell Douglas_ burden-shifting framework to prove discrimination built on circumstantial evidence. _McDonnell Douglas Corp. v. Green_, 411 U.S. 792 (1973). Moreover, the undersigned finds that the instant allegation regarding the USPS's failure to "convert to career status" is akin to a "failure-to-promote" claim under Title VII. As such, this court will seek guidance from the Fifth Circuit's most recent decision in _Smith v. Summit Midstream Partners_, No. 22-10020, 2022 WL 2462364 (5th Cir. July 6, 2022).

Under the _McDonnell Douglas_ framework, a plaintiff must establish a _prima facie_ case of discrimination by showing that she:

(1) [I]s a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Smith*, 2022 WL 2462364, at *1-2 (internal citation omitted).

Once the plaintiff satisfies her burden, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the adverse action." *Id.* at 2 (citing *McDonnell Douglas*, 411 U.S. at 802). After the employer meets this burden, the plaintiff must show that "each proffered reason is actually a pretext for the discriminatory purpose." *Id.*

For a failure-to-promote claim, the framework alters a bit, and the plaintiff's *prima facie* case requires she show:

(1) [S]he is a member of a protected class; (2) [s]he sought and was qualified for a position for which applicants were being sought; (3) [s]he was rejected for the position; and (4) the employer either (a) hired a person outside of the plaintiff's protected class, or (b) continued to seek applicants with the plaintiff's qualifications.

*Id.* at *2-3 (citation omitted).

Here, like in *Smith*, Mitchell cannot satisfy the fourth prong of her *prima facie* case. *Id.* at *3. In *Smith*, the plaintiff failed to show he "formally appl[ied] for the lead operator position" of his company's compressor operator, even though "there was no formal application process." *Id.* Additionally, the plaintiff argued he was "either as or more qualified" as the person chosen over him because he had "significant experience" with the company, and generally more experience as a compressor operator. *Id.* The Fifth Circuit, however, reasoned that Smith could not show he was "clearly better qualified" than the person chosen over him, nor that the "qualifications are so widely disparate that no reasonable employer would have made the same decision." *Id.* (internal citations and quotations omitted).

24

The same logic applies to Mitchell's case.  Not only was this *not* a position that Mitchell applied for, nor was there a "formal application process" for converting to career status, as this was a top-down decision, but Mitchell cannot succeed on either prongs two or four because she simply did not provide enough detail about those chosen over her.  In her formal complaint for EEO Complaint #13-15, Mitchell attached a list of "Comparative Employees and Seniority List for [Fort Worth] District."  Ex. E, Att. 7, Doc. No. 119-5, at 19.  This list shows that for seniority purposes, Mitchell is the most senior on the list.  *Id.*  However, as Cindy Muckensturm explained (Ex. C, Att. 1, Doc. No. 119-3, at 3), the USPS Headquarters made their decisions on which offices, and therefore which employees, to convert PSEs to career status based on: (1) office staffing; (2) earned hours; (3) productivity levels; and (4) whether the office has submitted a request to convert to the District Complement Committee.  *Id.*; *see also* Doc. No. 97 at 4.

Mitchell simply did not show she was "clearly better qualified" than these employees, even if she was more senior: Muckensturm affirmed, and Mitchell did not contest, that seniority status did not appear as a factor of consideration for promoting certain offices and employees to career positions.  *Smith*, 2022 WL 2462364, at *3; Ex. C, Att. 1, Doc. No. 119-3 at 3.  Moreover, Mitchell has neither alleged, nor shown, that the USPS converted employees who were outside of her protected class, nor that they continued to seek applicants.  The Postmaster has shown, and Mitchell agrees, that only 399 PSE positions were converted to career status.  *Smith*, 2022 WL 2462364, at *2-3.

Thus, the Postmaster has succeeded in showing that there is no genuine dispute of material fact and that it is correct as a matter of law.  FED. R. CIV. P. 56 (c)(1)(A)-(B).  Mitchell has failed to show specific facts exist over which there is a genuine dispute and has not rebutted the charge

that the Postmaster is entitled to judgment as a matter of law.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex,* 477 U.S. at 325).

As such, the undersigned recommends granting summary judgment on this claim in favor of the Postmaster.

### b.   Retaliation

Next, Mitchell alleges the USPS failed to convert her to career status in reprisal for her earlier EEO complaints.  Doc. No. 97 at 2-3 (citing EEO Complaints #14-11, #23-16), 4 (citing EEO Complaints #31-14, #13-15), 5 (citing EEO Complaint #39-16).

Pursuant to Title VII, when presented with circumstantial evidence alone, the court must again follow the *McDonnell Douglas* framework. *Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008).  Mitchell must therefore show that: (1) she engaged in an activity protected by Title VII; (2) the USPS took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.  *See id.* (internal citation omitted).  If Mitchell can satisfy her burden, the burden then shifts to the USPS to provide a "legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (internal citation and quotation omitted).  "If the employer asserts a nonretaliatory explanation, the plaintiff's *prima facie* case disappears, and the plaintiff must show that the given reason is merely a pretext for retaliation." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

To prove causation, a plaintiff may rely on temporal proximity between the adverse employment action and the protected activity as a basis for causation.  *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (internal footnote and quotations omitted).  The Fifth Circuit has ruled that "a six-and-a-half week timeframe is sufficiently close,[] but [] a five month

lapse is not close enough, without other evidence of retaliation, to establish the 'causal connection' element of a prima face case of retaliation." *Id.*

Here, EEO Complaint #31-14, filed on December 23, 2013, is the earliest EEO complaint that includes this allegation.  Ex. C, Att. 6, Doc. No. 119-3.  Mitchell's most recently filed EEO complaint prior to #31-14 was EEO Complaint #114-11, regarding the USPS's failure to hire her at seven different locations, and was filed on September 1, 2011.  Ex. A, Atts. 12-14, Doc. No. 119-1.

Thus, Mitchell has satisfied the first two prongs of her *prima facie* case — her previous EEO complaint is protected activity, and a failure-to-promote claim constitutes an adverse employment action.  *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 840 (E.D. Tex. 2014).  However, Mitchell's claim fails on the third prong, as she has produced no evidence adducing that the USPS failed to convert her to career status *because of* her prior EEO complaints. To prove causation, "a plaintiff must demonstrate that the employer's decision 'was based in part on knowledge of the employee's protected activity.'"  *Lyon*, 964 F.3d at 305 (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).  "Close timing between an employee's protected activity and an adverse action against [her] *may* provide the 'causal connection' required," but the Supreme Court has held it must be "very close."  *Id.* (emphasis in original) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001)).  Additionally, "temporal proximity alone is insufficient to prove but for causation," as it is just "one of the elements in the entire calculation."  *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992).

Here, Mitchell provides no evidence that the USPS failed to convert her to career status *because of* her 2011 EEO complaints.  Moreover, her prior protected activity was more than two

years before the alleged retaliation took place.  Mitchell states the USPS converted employees to career status on December 13, 2013, Doc. No. 97 at 4, while her most recent EEO complaint was filed in September 2011.  Notwithstanding that "temporal proximity alone is insufficient to prove but for causation," *Strong*, 482 F.3d at 808, this alleged reprisal is evidently not "very close." *Breeden*, 532 U.S. at 274; *Lyons*, 964 F.3d at 305 (five-month lapse too long).

Thus, with no further evidence to support her claim for causation, Mitchell cannot make out a *prima facie* case for retaliation for this allegation.  As such, the undersigned recommends granting summary judgment in favor of the Postmaster for this claim.

### c.  Age Discrimination

`       Next, Mitchell alleges the USPS discriminated against her because of her age when it failed to convert her to career status.  Doc. No. 97 at 4; Ex. E, Att. 7, Doc. No. 119-5 at 7; Ex. E, Att. 8, Doc. No. 119-5 at 1.  Mitchell was born March 3, 1960, making her fifty-four-years-old at the time of the career conversion in November 2014.  Ex. E, Att. 8, Doc. No. 119-5.  Mitchell therefore brings an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq.*

Under the ADEA, it is "unlawful for an employer to . . . refuse to hire . . . any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  The ADEA covers only those plaintiffs who are at least forty years old.  *Id.* § 631(a).  To establish an ADEA claim, Mitchell must show that her age was the "but-for" cause of the USPS Headquarters' failure to convert her to career status.  *See McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019).

Title VII and the ADEA have "virtually identical language" and "the same standard of proof," thus once again, the court employs the *McDonnell Douglas* framework.  *Kebiro v. Wal-*

*Mart Stores, Inc.*, 568 F. Supp. 2d 747, 752 (citations omitted); *see also McMichael*, 934 F.3d at 456. The undersigned will therefore apply the same modified *McDonnell Douglas* test for a "failure-to-promote" claim under Title VII in the context of an ADEA claim.

For the reasons stated above, Mitchell's ADEA claim for this allegation must therefore fail. Mitchell has not shown that she applied for this position, was "*clearly* better qualified" than the employees converted in other offices, and has neither alleged nor shown, that the USPS converted employees who were outside of her protected class, nor that they continued to seek applicants. *Smith*, 2022 WL 2462364, at *2-3; *see also supra* at 24-25. Even assuming Mitchell could make out her *prima facie* case of age discrimination, Mitchell has provided no evidence that the USPS Headquarters, or Cindy Mucknsturm's testimony in the EEO proceedings below, were pretextual. *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001) (requiring "substantial evidence" of pretext).

### d. Disability Discrimination

Lastly, Mitchell's TAC alleges that the USPS failed to convert her to career status because it discriminated against her based on her "mental disability," dysthymia and panic disorder in violation of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Doc. No. 97 at 4 (citing EEO Complaint #13-15); Ex. E, Att. 7, Doc. No. 119-5 at 7; Ex. E, Att. 8, Doc. No. 119-5 at 1.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. "The language of Title II tracks the language of Section 504 of the Rehabilitation Act." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 543 (S.D. Tex. 2020) (citation omitted). "It

'specifically provides that [t]he remedies, procedures, and rights available under Section 504 shall be the same as those available under Title II." *Id.* (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2010)). Thus, the necessary elements to state a Rehabilitation Act claim of discrimination are "operationally identical" to those under the ADA. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004); *see also* 29 U.S.C. § 794(d) ("The standards used to determined whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [] the Americans with Disabilities Act of 1990 [] and the provisions of sections 501 through 504."). Both statutes are "enforceable through an implied private right of action." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).

Here too, each statute is "analyzed under the *McDonnell Douglas* three step burden-shifting framework." *Rascon v. Perryton Indep. Sch. Dist.*, No. 2:21-CV-068, 2022 WL 3578257, at *3 (N.D. Tex. Aug. 19, 2022) (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316-17 (5th Cir. 2007) and *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121-22 (5th Cir. 1998)). Regarding a "failure-to-promote" claim, the Fifth Circuit follows the same modified *McDonnell Douglas* test under the ADA as it does under Title VII, with both requiring that the plaintiff seek out, or apply, for the promotion. *Rodriguez v. Brownsville Indep. Sch. Dist.*, 739 F. App'x 227, 232 (5th Cir. 2018); *see also Smith*, 2022 WL 2462364, at *2-3.[8]

Thus, for the reasons stated above, Mitchell's claim must fail because she has not shown that she applied for this position, was "clearly better qualified" than the employees converted in other offices, and has neither alleged nor shown, that the USPS converted employees who were outside of her protected class, nor that they continued to seek applicants. *Smith*, 2022 WL

---

[8] Moreover, Mitchell has not alleged that applying for a career position with the USPS would have been "a futile gesture" due to a "known and consistently enforced policy of discrimination." *Rodriguez*, 739 F. App'x at 231 (internal citation and quotation omitted).

2462364, at *2-3; *see also supra* at 24-25. Furthermore, Mitchell has not shown that she is disabled

under either the ADA or the Rehabilitation Act. *Golden v. City of Longview*, No. 6:20-CV-620,

2022 WL 2704533, at *4 (E.D. Tex. July 11, 2022); 42 U.S.C. § 12102(2)(A) (2009); 29 U.S.C.

§ 705(9).[9] Even assuming Mitchell could make out her *prima facie* case of disability, Mitchell

has provided no evidence that the USPS Headquarters, or Cindy Mucknsturm's testimony in the

EEO proceedings below, were pretextual. *Auguster*, 249 F.3d at 402-03 (requiring the plaintiff

provide "substantial evidence" of pretext).

Thus, the Postmaster has succeeded in showing that there is no genuine dispute of material

fact and that it is correct as a matter of law. FED. R. CIV. P. 56 (c)(1)(A)-(B). As such, the

undersigned recommends granting summary judgment in favor of the Postmaster for this claim.

### B. LWOP Status from 2002 to 2008

Next, Mitchell frequently complains about being placed on LWOP status for the period

between 2002 and 2008. *See, e.g.*, Doc. No. 97 at 3 (citing EEO Complaint # 23-17), 8 (citing

EEO Complaint # 12-17). Mitchell alleges that the USPS retaliated against her for prior EEO

activity when the USPS placed her on involuntary LWOP status for that period. *Id.* As collateral

consequences, Mitchell also complains about losing compensation for 12,475 hours of work,

annual leave, sick leave, retirement annuity, and contends she suffered "mental anguish (pain and

suffering)" for this period. *Id.* at 3. Indeed, Mitchell's EEO Complaint #12-17 encompasses

allegations almost entirely dedicated to this period of LWOP, and the consequences that followed.

*Id.* at 8 (citing EEO Complaint #12-17). Specifically, Mitchell complains that the USPS retaliated

---

[9] While this claim is not claim precluded like her next claim, *see infra*, the undersigned finds the Fifth Circuit's analysis in her earlier litigation for the *same* disabilities under the Rehabilitation Act to be highly persuasive in the instant case. *See Sapp v. Donohoe*, 539 F. App'x 590, 596 (5th Cir. 2013) ("Sapp has failed to state a prima facie case of discrimination under the Rehabilitation Act, because uncontroverted record evidence indicates . . .that Sapp was not in fact disabled."); *id.* at 593 (Sapp submitted medical evaluations from three physicians diagnosing her with "depression, dysthymia, and panic disorder.").

against her when it "completed PS Form 50/Retirement Thrift Report (RTR denying full retirement for 1980 to present; placed [her] in involuntary LWOP status since 2002-2008, [and] denied correct entry on duty dates, LCD, and RCD dates.[)]" *Id.*

      i.     <u>2002-2008 LWOP Period</u>

The court reminds Mitchell of her earlier litigation before the undersigned in this same court, in *Carolyn Sapp v. John Potter*, No. 1:07-CV-650, filed on September 24, 2007. Doc. No. 1, *Sapp*, No. 1:07-cv-650.[10] In this earlier litigation, Mitchell complained that "[s]he [] went on leave without pay and she filed an EEO complaint on November 22nd, 2002." Doc. No. 1 at 6, *Sapp*, No. 1:07-cv-650. On April 1, 2010, Carolyn Sapp filed her *Motion for Summary Judgment* (Doc. No. 64), and on February 6, 2012, then-Postmaster John Potter filed his *Motion for Summary Judgment* (Doc. No. 129). On July 26, 2012, the undersigned issued a *Report and Recommendation* (Doc. No. 182) denying Sapp's motion and granting Potter's motion.

In this court's previous *Report and Recommendation* (Doc. No. 182), the undersigned addressed Mitchell's exact claim brought forth in the present litigation: "Sapp alleges that the following incidents support her retaliation claims . . . (2) in 2002, she was placed on LWOP status." Doc. No. 182 at 39, *Sapp*, No. 1:07-cv-650. The undersigned then addressed the merits of Sapp's retaliation claim, first holding that Sapp satisfied showing a *prima facie* case under *McDonnell Douglas* for retaliation, then second, holding Potter "ha[d] articulated legitimate explanations for these incidents . . . he explain[ed] that the the USPS placed Sapp on LWOP status pursuant to her own request." *Id.* at 40. After ruling that Sapp failed to satisfy her burden to show that Potter's

---

[10] The undersigned notes there is no dispute that Plaintiff Carolyn Mitchell formerly identified as "Carolyn Sapp" and was the plaintiff in this earlier case. *See, e.g.*, Doc. Nos. 124 at 14, 17; Doc. No. 48 at 8 ("My name is Carolyn Sapp Mitchell.").

reasons were pretextual, the undersigned ruled that "Sapp's retaliation claims should be dismissed." *Id.* at 42.

Sapp filed her *Objection to Magistrate's Report and Recommendation* (Doc. No. 185) on August 27, 2012, and on September 7, 2012, United States District Judge Ron Clark issued an *Order Overruling Objections and Adopting Report and Recommendation* (Doc. No. 186). On October 4, 2012, Sapp appealed to the U.S. Court of Appeals for the Fifth Circuit (Doc. No. 188), and on November 18, 2013, the Fifth Circuit affirmed the judgment of the district court. Doc. No. 199. Mitchell now raises the *same* retaliation allegations over the *same* LWOP period.

In its motion, the Postmaster explains that:

> Mitchell [used] the date of the form PS-50 or RTR report as the basis of her EEO complaint for exhaustion purposes, but each complaint was really just a poorly disguised attempt to relitigate the same issues already decided by this Court regarding her LWOP status from 2002-2008. To the extent that she is complaining about records dating back to this time period, these claims are . . . improper attempts to resurrect claims from her dismissed lawsuit.

Doc. No. 119 at 39.

While the Postmaster failed to brief the merits of claim preclusion — likely because this allegation so clearly satisfies all four elements — the undersigned will discuss them below.

### a. Res Judicata

The doctrine of *res judicata*, or claim preclusion, "bars the litigation of claims that have been or should have been raised in an earlier suit." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016) (citing *Petro-Hunt L.L.C. v. United States*, 365 F.3d 383, 395 (5th Cir. 2004)) (footnote omitted). The *res judicata* test for when a court is precluded from hearing a claim requires that: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final

33

judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Id.* (internal citation omitted). All four requirements are satisfied in the present case.

In *Carolyn Sapp v. John Potter*, No. 1:07-CV-650, Mitchell — the same plaintiff in the instant case — and the U.S. Postmaster General, then John Potter — are identical to the same parties in the present case.[11] Second, there is no dispute that both the present court and the Fifth Circuit are courts of competent jurisdiction to this case. Third, *Sapp v. Potter* concluded to a final judgment on the merits, both in the present court upon the undersigned's *Report and Recommendation* (Doc. No. 182), followed by the Judge Clark's *Order Overruling Objections and Adopting Report and Recommendation* (Doc. No. 188), and upon the Fifth Circuit's affirmation of the district court's judgment (Doc. No. 199). Lastly, Mitchell brings the same cause of action regarding the same factual basis. Doc. No. 97 at 3.

Thus, the undersigned finds that Mitchell's complaint regarding retaliation over the LWOP period between 2002-2008 is sufficiently claim precluded. Summary judgment for this retaliation claim should be granted in favor of the Postmaster.

ii.    *LCD, RCD, eOPF*

As collateral to Mitchell's retaliation complaint for the LWOP period discussed above, *supra*, Mitchell also complains that the USPS "denied correct entry on duty dates, LCD, and RCD dates" and "failed to make [the PS Form 50/RTR report] accessible on eOPF." Doc. No. 97 at 8. A "Retirement Thrift Report ("RTR")" is an employment document that "reflects the service history of a career employee," designating the amount of time calculated from their Leave Computation Date ("LCD") — the dates and amount of time an employee went on leave — and the employee's

---

[11] As Mitchell sued the head of an agency in his official capacity, the parties merely substitute individuals depending on which individual is holding that office at the time of ongoing litigation. FED. R. CIV. P. 26(d). Thus, the U.S. Postmaster General, even though held by different individuals at different times, is the same party in this litigation.

Retirement Calculation Date ("RCD") — the date from which an employee's retirement date is calculated, which is generally the employee's start date.  Doc. No. 119 at 12; Ex. G, Att. 1, Doc. No. 119-7 at 9.

Currently, Mitchell's RTR is dated from 1986, even though Mitchell started work in 1980. Ex. G, Att. 1, Doc. No. 119-7 at 9.  Additionally, Mitchell's LCD dates and RCD dates include Mitchell's period of leave after 2008 due to a Reduction-in-Force ("RIF") at the USPS.

To the extent Mitchell complains that the USPS processed a PS Form 50/RTR that failed to correct her leave without pay status for the 2002-2008 period, this collateral issue is claim precluded for the reasons stated above.  *See supra.*  For any complaints about issues in computation with Mitchell's LCD and RCD calculations due to this LWOP period, this is similarly precluded. *Id.*  Lastly, regarding Mitchell's complaint that she could not access her RTR on her Electronic Official Personnel Folder ("eOPF"), and that the USPS marked the wrong RCD date on her RTR, Mitchell cannot succeed on her retaliation claim.

### a.  Retaliation

Once again, the court must follow the *McDonnell Douglas* burden-shifting standard when a plaintiff provides only circumstantial evidence of retaliation, as is the case here.  *Cooper*, 278 F. App'x at 320.  Thus, Mitchell must first establish a *prima facie* case of retaliation under Title VII. *Id.*  This requires Mitchell to show that: (1) she engaged in an activity protected by Title VII; (2) the USPS took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.  *See id.* (internal citation omitted).  An "adverse employment action" is "generally limited to tangible employment actions that constitute a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment . . . or a decision causing a significant change in benefits.'"  *Brooks*, 70 F. Supp. 3d

at 835 (citations omitted).  If Mitchell can satisfy her burden, the burden then shifts to the USPS to provide a "legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (internal citation and quotation omitted).  "If the employer asserts a nonretaliatory explanation, the plaintiff's *prima facie* case disappears, and the plaintiff must show that the given reason is merely a pretext for retaliation." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

Here, the USPS "does not dispute that Mitchell engaged in prior protected activities (her EEO complaints)."  Doc. No. 119 at 30.  However, Mitchell cannot satisfy prongs two and three of the revised *McDonnell Douglas* test for her eOPF and RCD retaliation claims.  First, Mitchell's complaint that she could not access her RTR on eOPF is simply not an "adverse employment action" within the meaning of the statute.  *Brooks*, 70 F. Supp. 3d at 835 ("An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than 'mere tangential effect on a possible future ultimate employment decision.'") (internal citations and quotations omitted).   An employee's difficulty accessing online employment personnel files simply "does not affect job duties, compensation, or benefits" and thus cannot be an adverse employment action.  *Id.* at 834 (internal citations and quotations omitted).

Mitchell's second allegation regarding her RCD date, however, is an actionable adverse employment action, as it affects the calculation of Mitchell's retirement benefits.  *Id.*  However, here, Mitchell fails to satisfy prong three: she has provided no evidence to show any causal connection between the USPS's RCD date of 1986 and any of her prior EEO complaints.  *Cooper*, 278 F. App'x at 320.  Notably, in the EEO proceedings below for EEO Complaint #12-17, the administrative judge reviewed the record and found that Anil Patel, a Personnel Processing Specialist, "processed a Form 50 . . . correctly based on the information he received from the Office of Personnel Management (OPM) concerning Complainant's prior career service with the Postal

Service." Ex. I, Att. 5, Doc. No. 119-9 at 4. "Patel also corrected Complainant's RCD to November 16, 1986, when Standard Forms 2806/3100 were received from OPM." *Id.*

Thus, the USPS has articulated a "legitimate, nondiscriminatory reason" for the mistakes on Mitchell's RCD dates — Mitchell incorrectly filled out her standard forms, and the USPS processed them as provided. Here, Mitchell has entirely failed to establish the third prong of her case: she has failed to show the USPS intentionally changed her RCD date *because of* her prior EEO activity. *Brooks*, 70 F. Supp. 3d at 835. Furthermore, Mitchell also failed to identify against *which* prior EEO complaint the USPS retaliated.

Here, Mitchell avers that "on October 4, 2016 [the USPS] processed [F]orm 50/RTR report but . . . denied correct LCD, RCD dates." Doc. No. 124 at 15; *see also* Doc. No. 97 at 8. Mitchell's most recent EEO complaint before this one was filed on March 31, 2016, *over six months before* the change in her RCD date. *See* Ex. H, Att. 9, Doc. No. 119-8 ("Date Formal Filed: March 31, 2016"). Therefore, without any further evidence to show a causal connection, Mitchell cannot even rely on temporal proximity for this allegation. *Lyons*, 964 F.3d at 305 (holding five-month lapse did not satisfy close timing to establish causation). As such, the undersigned recommends granting summary judgment in favor of the USPS for this claim.

C. 2011 Failure to Hire

Turning to Mitchell's EEO Complaint #14-11, Mitchell alleges the USPS discriminated against her because of her race, sex, age, and disability, and retaliated against her on prior EEO activity, when it failed to hire her at seven different Post Office locations across Texas. Doc. No. 97 at 2 (citing EEO Complaint #14-11). Additionally, she raises the same allegations for the USPS's delay in onboarding her to the Euless Post Office.

Throughout the summer of 2011, Mitchell applied for a PSE Clerk position with the following offices: Weatherford, Fort Worth, Village Mills, Spurger, Hull, and Hamshire. Doc. No. 119 at 5-9. Ultimately, Mitchell was turned down at each office, but hired at the Euless Post Office. *Id.* Mitchell brings causes of action under Title VII, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Age Discrimination in Employment Act ("ADEA") against all seven offices that failed to hire her, claiming discrimination as the cause. Doc. No. 97 at 2; *see also* Doc. No. 124 at 3. The undersigned will discuss Mitchell's retaliation claim first, and then turn to Mitchell's discrimination claims.

  i.    *Retaliation*

Here again, Mitchell cannot satisfy the causation prong needed to establish a *prima facie* case of discriminatory retaliation under the *McDonnell Douglas* framework. *Cooper*, 278 F. App'x at 320. The Postmaster agrees that: (1) Mitchell engaged in prior protected activities in that she filed EEO complaints in her former position with the USPS, *see generally Carolyn v. Potter*, No. 1:07-cv-650; and also agrees that (2) by failing to hire Mitchell, all seven offices took adverse employment actions against her. *See* Doc. No. 119 at 30. Additionally, while a delay in onboarding an employee is not likely an adverse employment action, the undersigned will continue to analyze this claim. *Brooks*, 70 F. Supp. 3d at 834-35.

The Postmaster contends that "Mitchell's claims of retaliation fail because there is no evidence of a causal connection between Mitchell's protected activities and the fact that [she] was not selected." *Id.* at 31. The undersigned agrees.

Mitchell's most recent EEO complaint that she filed before re-applying for a position with the USPS was on March 27, 2008. This is *more than three years* before Mitchell applied for a position with any of the seven offices, and far too remote to prove causation via temporal

proximity.  *Lyons*, 964 F.3d at 305.  Further, Mitchell has failed to provide any evidence that any of the hiring officials at these offices even *knew* about her former EEO complaints.  Meanwhile, six of the seven the hiring officials have signed affidavits that they did not know of her former complaints.  *See* Ex. A, Atts. 2-4, 6, 8-9, Doc. No. 119-1 at 3.  Only Elizabeth Epperson at the Village Mills Post Office admitted that she knew about Mitchell's prior EEO complaints because Mitchell "volunteered information and stated she had previously filed an EEO complaint. [Epperson] did not ask her" this information.  *Id.*, Att. 5.

Mitchell's *Response* (Doc. No. 124) has not provided any evidence to create "any genuine dispute of material fact" to show that these hiring officials either knew that she filed former EEO complaints or made their hiring decisions based on this information.  FED. R. CIV. P. 56 (c)(1)(A)-(B).  Thus, this case is similar to *Walker v. Geithner*, where a black employee applied for his old job as a police officer, and sued based on race discrimination when he was not hired.  400 F. App'x 914, 915 (5th Cir. 2010).  In that case, the Fifth Circuit held Walker could not establish his *prima facie* case of retaliation "because there [was] no evidence that his employers were aware of his protected activity, so there is no causal link."  *Id.* at 917.  Similar to Walker, here, Mitchell "defends [her] assertion with nothing but conclusional statements, which are insufficient to withstand summary judgment."  *Id.*

Lastly, when analyzing Mitchell's claim that the Euless Office delayed her start date, she has failed to show Nurse Johnson knew about Mitchell's prior EEO complaints, and delayed her onboarding *because of* such knowledge.  Ex. A, Att. 11, Doc No. 119-1, at 1.  Further, she cannot show that such a policy of requesting updated medical documentation is not a neutral, generally applicable action.

Therefore, the undersigned recommends granting summary judgment in favor of the Postmaster for this retaliation claim.

    *ii.*        <u>*Discrimination Allegations*</u>

Next, Mitchell alleges she was not hired for the job as PSE Clerk at all seven locations because the hiring officials discriminated against her because of her race, sex, age, and disability pursuant to Title VII, the ADA, the Rehabilitation Act, and the ADEA. The undersigned addresses each in turn.

    a.    <u>Title VII: Race and Sex</u>

Following the *McDonnell Douglas* framework once more, Mitchell has satisfied her burden in showing a *prima facie* case of discrimination. However, Mitchell failed to show that the Postmaster's legitimate, nondiscriminatory reasons were pretextual.

Under the *McDonnell Douglas* framework, a plaintiff must establish a *prima facie* case of discrimination by showing that she:

> (1) [I]s a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Smith*, 2022 WL 2462364, at *1-2 (citing *McCoy*, 492 F.3d at 556).

Here the Postmaster does not dispute that Mitchell has satisfied the first three elements. Doc. No. 119 at 28. As a black woman, Mitchell is unequivocally a member of a protected group. *Id.* Further, while there may be a genuine question as to whether Mitchell was "qualified for the position" of PSE Clerk,[12] this element is conceded. *Id.* As such, the undersigned will assume for

---

[12] For example, it is unknown whether her placement on the hiring register is a material fact. *Compare* Ex. A, Att. 2, Doc. No. 119-1 at 3 ("3rd or 4th person on the hiring register") *with id.*, Att. 4 at 3 ("Complainant was in the bottom half of the applicants on the register."). Regardless, the Postmaster concedes Mitchell has met the first three elements here. *See* Doc. No. 119 at 28.

the instant purposes that Mitchell has satisfied her *prima facie* case, and will turn to the Postmaster's legitimate, nondiscriminatory reasons.

Here, the Postmaster has satisfied its burden on this prong for each of the seven offices that failed to hire Mitchell. At the Weatherford and Fort Worth offices, the hiring officials hired veterans, not outside of *both* of Mitchell's protected group. Ex. A, Atts. 2,3, Doc. No. 119-1 at 3. For example, at Weatherford, the hiring official hired a black male veteran "who was listed higher on the register" than Mitchell. *Id.*, Att. 2 at 3. Additionally, the veteran at the Forth Worth office "had the highest score on the hiring list." *Id.*, Att. 3 at 3.

Moving on to the Burleson Post Office, the hiring official there picked "the next eligible applicant on the hiring list who had responded to the District's request." *Id.*, Att. 4 at 5. At both Village Mills and Hull, the hiring officials chose employees that had already worked in that office. *Id.*, Atts 5, 8. At Village Mills, the hiring official chose her former Postmaster Relief for the job, who was deemed "better qualified" because she already "knew the office and procedures." *Id.*, Att. 5 at 4.[13] Similarly, at Hull, the hiring official chose her Postmaster Relief as well, stating she "knew the office and all office procedures. She was the best qualified." *Id.*, Att. 8 at 3.

Next, at the Spurger Post Office, the hiring official chose a candidate who knew how to handle money, make bank deposits, and deal with customers. *Id.*, Att. 6 at 3. Additionally, the hiring official stated she failed to hire Mitchell, at least in part, because of "her past attendance issues" and "based on the interview process." *Id.* at 4. Lastly, at the Hamshire Post Office, the hiring official affirmed that Mitchell "told [her] she retired." *Id.*, Att. 9 at 4. The hiring official

---

[13] Additionally, in an email attached to Mitchell's *Response* (Doc. No. 124), hiring official Elizabeth Epperson stated she did not hire Mitchell because she received information Mitchell "walked off the workroom floor one day and did not return. I needed someone responsible to fill the position." Doc. No. 124 at 29. Mention of this same event was raised as a reason by the hiring official in the Hamshire Office. *Id.* at 30. This constitutes yet another legitimate, nondiscriminatory reason for failing to hire Mitchell.

grew "a little suspicious about the way she responded," so she called Mitchell's old Plant Manager and inquired about her. *Id.* Regardless, the official affirmed she "selected the best person for the position based on interviews and review of applications." *Id.*

Thus, the Postmaster has satisfied its burden and produced a "legitimate, nondiscriminatory reason" why each of the seven hiring officials failed to hire Mitchell. *Smith*, 2022 WL 2462364, at *2. The burden now shifts to Mitchell to "raise a genuine issue of material fact that shows the defendant's reason[s] may be a pretext for discrimination." *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003) (citation and footnote omitted).

"In order for there to be a jury question, however, 'there must be a conflict in substantial evidence . . . as to allow a rational factfinder to make a reasonable inference that race was a determinative reason for the employment decision.'" *Jackson v. Tex. Forest Serv.*, 194 F. Supp. 2d 566, 571 (5th Cir. 2001) (internal citation omitted). Essentially, Mitchell must "present [] new evidence or point to any overlooked evidence that, if true, would prove that [the USPS's] stated reasons are mere pretext." *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 357 (5th Cir. 2019). The Fifth Circuit has long held that the "plaintiff must produce *substantial evidence* of pretext . . .a mere shadow of doubt is insufficient . . .[and] an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief." *Auguster*, 249 F.3d at 402-03 (emphasis added) (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)). In other words, Mitchell must provide evidentiary support that the hiring officials' reasons are pretextual; she cannot succeed by merely stating she *believes* they are pretext. *Id.*

Here, Mitchell has not carried her burden. In attempting to show that each hiring official's reasons were pretextual, Mitchell attached a Matrix to her *Response* (Doc. No. 124 at 3). This Matrix shows the purported race, age, years of experience, and hiring score attributed to each

candidate hired in the seven offices. *Id.* While the court is not allowed to make credibility determinations at this stage of the proceedings, the undersigned notes that Mitchell has failed to provide any competent summary judgment evidence pursuant to Rule 56. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 255; *Ransom v. M. Patel Enters., Inc.*, 825 F. Supp. 2d 799, 802 (W.D. Tex. 2011) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.") (citing *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)); *see also* FED. R. CIV. P. 56(c)(1)(A) (emphasis added) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, *including depositions, documents, electronically stored information, affidavits, . . .*"). Moreover, "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Ransom*, 825 F. Supp. 2d at 802 (quoting *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)).

Therefore, because Mitchell failed to produce any adequate substantiation as to the source of her evidence, notably the information in her Matrix, the court need not entertain this as proper pretextual rebuttal evidence. *Id.* Even assuming that Mitchell's Matrix *is* substantiated, and that, according to her, all seven offices hired *only* white people, this *still* does not raise a genuine issue of material fact. *See* Doc. No. 124 at 3 (displaying only white hires at all seven offices). Even if *all* seven offices hired only white employees, Mitchell relies solely on her hiring score and years of experience as reasons why the hiring officials' reasons must be pretextual. *See id.*

Essentially, Mitchell's argument is akin to saying, "every office hired a white person with 0 to 6 years of experience, compared to my 21 years of experience. Additionally, their hiring scores are between 2 and 8 points lower than mine. Thus, discrimination must be the *only* reason

they did not hire me." This argument, however, belies the entire hiring process the USPS conducts at their offices. Hiring officials may base their decisions on any number of legitimate reasons, as here, such as: hiring a former employee at that office, hiring a veteran, hiring someone who interviewed best, etc. "Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus." *Harville v. City of Hous., Miss.*, 945 F.3d 870, 878 (5th Cir. 2019) (internal citations and quotations omitted). For example, a hiring official could hire an employee based purely on nepotism. *See id.* ("We agree with the district court that Harville fails to demonstrate how a decision based on family preferences intentionally discriminated on the basis of race.").

Further, at least one court has found that hiring based on veteran preference is a legitimate reason. *Downing v. Lee*, No. 1:16-CV-1511, 2017 WL 3082664, at * (E.D. Va. July 18, 2017) ("The existence of OPM procedures—including veterans' preferences procedures—that mandate the hiring of certain individuals constitutes a legitimate, nondiscriminatory reason for an individual's non-hire.") (internal citation omitted).

Moreover, when looking at Mitchell's attached exhibits to her *Response* (Doc. No. 124), this only provides *further* legitimate, nondiscriminatory reasons why certain hiring officials failed to hire her: they received information "she walked off the workroom floor one day and did not return." Doc. No. 124 at 29-30. These purported statements, if true, only serve to assist the Postmaster in showing a lack of discriminatory treatment.

As such, Mitchell has failed to satisfy her burden that all seven hiring officials' reasons for not hiring her were pretextual. Therefore, the undersigned recommends granting summary judgment on this claim to the Postmaster here as well.

b.   <u>Disability Discrimination</u>

Next, Mitchell alleges that all seven Post Offices that failed to hire her discriminated against her based on disability, pursuant to both the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* Mitchell alleges she suffers from dysthmia and panic disorder, and that because of these afflictions, all seven of the Post Offices failed to hire her.  Ex. B, Att. 2, Doc. No. 119-2 at 2.  Mitchell also alleges that she suffers from "Mental Disability (Stress)" as the basis for this claim.  *See, e.g.*, Ex. A, Att. 12, Doc. No. 119-1 at 1.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."  42 U.S.C. § 12132.  "The language of Title II tracks the language of Section 504 of the Rehabilitation Act," *Taylor*, 488 F. Supp. 3d at 543 (citation omitted), and the necessary elements to state a Rehabilitation Act claim of discrimination are "operationally identical" to those under the ADA. *Melton*, 391 F.3d at 676 n.8.

Here too, each statute is "analyzed under the *McDonnell Douglas* three step burden-shifting framework."  *Rascon*, 2022 WL 3578257, at *3 (citing *Jenkins*, 487 F.3d at 316-17; *Sherrod*, 132 F.3d at 1121-22).  Thus, to qualify for relief under both Acts, a plaintiff must first establish her *prima facie* case of discrimination.  Under the Rehabilitation Act, she must show that:

> (1) [S]he has a disability; (2) she is an individual qualified for the job in question; (3) she worked for a program or activity receiving Federal financial assistance; and (4) an adverse employment decision was made solely because of this disability.

*McKay v. Johanns*, 265 F. App'x 267, 268 (5th Cir. 2008).

Under the ADA, Mitchell's *prima facie* case only slightly differs, and she must show: (1) she was disabled; (2) she was qualified to do the job; (3) an adverse employment action was taken against her; and (4) she was replaced by or treated less favorably than non-disabled employees. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).

First, with regards to the ADA, Mitchell has not satisfied her burden to establish her *prima facie* case. An individual is considered disabled under the ADA if she demonstrates: (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such impairment; or (3) she is regarded as having such an impairment. *Golden*, 2022 WL 2704533, at *4. A "major life activity" includes "caring for oneself, performing manual tasks, walking, seeing . . . and working." *Id.* at *5 (citing 42 U.S.C. § 12102(2)(A) (2009)). A substantially limiting impairment must "limit the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* (citing C.F.R. § 1630.2(j)(1)(ii)).

Here, Mitchell has failed to provide sufficient evidence to satisfy *any* of the three prongs. Mitchell avers that she suffers from "Mental Disability (Stress)," "Panic Disorder," and "Dysthmia." *See, e.g.*, Ex. A, Att. 12, Doc. No. 119-1 at 1; Ex. B, Att. 2, Doc. No. 119-2 at 2. However, these "unsupported conclusional statement[s]" fail to provide sufficient evidence to create a jury question as to whether she was disabled. *Aldrup*, 274 F.3d at 287. Indeed, at one point, Mitchell had a disability code on her PS Form 50. Doc. No. 97 at 5. Mitchell states, however, that this disability code was incorrect, and that she was discriminated against because of her race, sex, and retaliated against for EEO activity, when the USPS failed to change it. *Id.* She has provided no further evidence that she suffers from these disabilities, or that they substantially limit one or more major life activities. *Golden*, 2022 WL 2704533, at *5.

Once again, the court reminds Mitchell that "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Ransom*, 825 F. Supp. 2d at 802 (quoting *Adam*, 465 F.3d at 164). Additionally, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Id.* (citing *Turner*, 476 F.3d at 343).

Second, Mitchell has failed to show she has a known record of stress, dysthymia, and panic disorder, or that they are located *anywhere* on her record, whether on her previous employment records with the USPS, or in her job applications to all seven offices. *Aldrup*, 274 F.3d at 287. This is merely another unsubstantiated, conclusory speculation. *Ransom*, 825 F. Supp. 2d at 802. Lastly, Mitchell has not alleged, and has not raised a genuine dispute to this fact, that these seven offices ever "regarded" her as disabled. Under the ADA 2008 amendments, an individual is "regarded as" disabled when "she is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity." *Gray v. WinCo Foods, LLC*, No. 4:20-CV-791, 2022 WL 2899277, at *13 (E.D. Tex. June 6, 2022) (citing 42 U.S.C. § 12102(3)(A)). Here too, Mitchell has failed to produce sufficient evidence raising a genuine dispute as to whether *any* of the seven hiring officials across these Postal Offices either knew about her stress, panic disorder, and dysthymia, or *perceived her* as having such an impairment. *Id.*

Moreover, even if Mitchell *could* satisfy a showing of her *prima facie* case, she cannot rebut these seven hiring officials' legitimate, nondiscriminatory reasons for not hiring her. Namely, she has again not produced any evidence that these officials made their hiring decisions *because of* her alleged disabilities, nor that their legitimate reasons are pretextual. *Auguster*, 249 F.3d at 402-03.

47

When turning to the Rehabilitation Act of 1973, the court arrives at the same conclusion. The Rehabilitation Act defines "disability" as "(A) . . .a physical or mental impairment that constitutes or results in a substantial impediment to employment; or (B) . . . the meaning given it in section 12102 of Title 42 [the ADA]."  29 U.S.C. § 705(9).  Therefore, the Rehabilitation Act adopts the same definition as an "individual with a disability" and "limitations on major life activities" as the ADA.  *Id.* § 705(20)(A)–(B).  As such, for the same reasons stated above, Mitchell cannot satisfy the first prong of her *prima facie* case that she has a disability under this Act as well. *McKay*, 265 F. App'x at 268.

Further, even assuming Mitchell *could* satisfy this first prong, she has once again provided no evidence to satisfy the fourth prong of her *prima facie* case: that an adverse employment decision was made *solely because of* this disability.  *Id.*  Mitchell has produced no evidence whatsoever to raise a genuine dispute of material fact that all seven hiring officials (1) knew of her alleged disability; and (2) failed to hire her *because of* this disability.  Instead, Mitchell has only stated a conclusory, unsubstantiated allegation.  This cannot suffice at this procedural stage.

As such, the undersigned recommends granting summary judgment in favor of the Postmaster for Mitchell's ADA and Rehabilitation Act claims.

c.  Age Discrimination

Lastly, Mitchell contends that all seven hiring officials discriminated against her based on age when they failed to hire her.  Mitchell was born March 3, 1960, making her fifty-one-years-old at the time she applied for a position with each of the seven Post Offices.  *See, e.g.*, Ex. A, Att. 2, Doc. No. 119-1 at 2.  Mitchell therefore alleges the USPS discriminated against her because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623.

Under the ADEA, it is "unlawful for an employer to . . . refuse to hire . . . any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA covers only those plaintiffs who are at least forty years old. *Id.* § 631(a). To establish an ADEA claim, Mitchell must show that her age was the "but-for" cause of all seven Post Offices' failure to hire her. *See McMichael*, 934 F.3d at 455.

Title VII and the ADEA have "virtually identical language" and "the same standard of proof," thus once again, the court employs the *McDonnell Douglas* framework. *Kebiro v. Wal-Mart Stores, Inc.*, 568 F. Supp. 2d 747, 752 (citations omitted); *see also McMichael*, 934 F.3d at 456.

To establish a *prima facie* case of discrimination under the ADEA, Mitchell must show that she: "(1) is a member of a protected class; (2) is qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or treated less favorably than someone outside the protected class." *Easley v. Lowndes Cnty., Miss.*, No. 21-60136, 2022 WL 39001, at *3 (5th Cir. Jan. 4, 2022). The Postmaster concedes the first three elements are satisfied. Doc. No. 119 at 28.

For at least three of the Post Offices Mitchell applied to —Village Mills, Hull, and Spurger — she cannot satisfy the fourth prong. The Postmaster points to the fact that "[t]hree of the Post Offices selected applicants that were older or nearly the same age as Mitchell": Anna Self at Village Mills, Lisa Powers at Hull, and Crystal Ivey at Spurger. Doc. No. 119 at 29. The hiring officials' affidavits confirm this. *See* Ex. A, Aff. 5, Doc. No. 119-1 at 4 ("[Anna Self] is 60 years old"); *id.*, Att. 8 at 3 ("[Lisa Powers] is 50 years old"); *id.*, Att. 6 at 3 ("Crystal Ivey, age 49 or 50"). Moreover, Mitchell does not dispute this. In her Matrix (Doc. No. 124 at 3), she fails to provide ages for these then-applicants, excluding Ivey altogether. Therefore, these three applicants

49

are in the *same* protected class as Mitchell and are not "substantially younger" than the plaintiff — indeed, they were *older* or near her identical age at the time of hiring. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Easley*, 2022 WL 39001, at *3. The undersigned will then turn to candidates chosen over Mitchell at the following Post Offices: Weatherford, Fort Worth, Burleson, and Hamshire.

To begin, neither the hiring official's affidavit, nor Mitchell in her TAC (Doc. No. 97) and *Response* (Doc. No. 119), with the attached Matrix, states the age for the employee chosen at the Fort Worth Post Office. Without *any* showing of this candidate's age from either party, the undersigned simply cannot determine whether there is even an inference of age discrimination under the ADEA. For the present purposes, the undersigned will assume Anthony Acosta — the veteran candidate chosen over Mitchell — was younger than Mitchell. *Reeves*, 530 U.S. at 150 ("[T]he court must draw all reasonable inferences in favor of the nonmoving party."). Here, however, the hiring official affirmed that he hired Mr. Acosta because he had "Veteran preference as a compensable veteran and had the highest score on the hiring list." Ex. A, Att. 3, Doc. No. 119-1 at 3. Mitchell has offered no evidence at this stage to show that this legitimate, nondiscriminatory reason was "false or 'unworthy of credence.'" *Easley*, 2022 WL 39001, at *4 (internal citation and quotation omitted); *see also infra* (discussion on pretext).

Turning to the candidates chosen at Weatherford, Burleson, and Hamshire, one candidate was stated to be in his "late 20[']s or middle 30's," Ex. A, Att. 1, Doc. No. 119-1 at 3, with the other two candidates estimated to be in their forties. *Id.*, Att. 4 at 3; *id.*, Att. 9 at 3. As Mitchell was fifty-one-years-old at the time of applying, a candidate in their late-twenties or early-thirties is clearly "substantially younger," raising an inference of age discrimination. *O'Connor*, 517 U.S. at 313. Moreover, it does not matter that two of the other candidates are in their forties, and

therefore in the same protected class as Mitchell, because they too are "substantially younger" than her.  *See id.* at 312 (emphasis in original) ("The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age.*").

However, like Mitchell's previous discrimination claims, she cannot show the Postmaster's legitimate, nondiscriminatory reasons are pretextual.  "A plaintiff can demonstrate that the proffered reasons are pretextual 'by showing that the employer's proffered explanation is false or 'unworthy of credence.'"  *Easley*, 2022 WL 39001, at *4 (internal citation and quotation omitted). A plaintiff must "do more than assert that [her employer's reasons] are wrong, [she] 'must produce evidence permitting the jury to disbelieve that [the USPS's] proffered reason was its true motivation.'"  *Id.* (citation omitted); *see also Auguster*, 249 F.3d at 402-03.  Here, Mitchell has produced no evidence to demonstrate that these three hiring officials' reasons for not hiring her were pretextual.  *Id.*  The lack of evidence alone therefore must defeat her claim, as she cannot show they failed to hire her *because of* her age.  *O'Connor*, 517 U.S. at 313.

As such, the undersigned recommends granting summary judgment in favor of the Postmaster on Mitchell's ADEA claim as well.  The undersigned will next consolidate the rest of Mitchell's employment discrimination claims for greater ease and brevity.

D. Miscellaneous Discrimination Claims

The court will take up the rest of Mitchell's miscellaneous discrimination claims, as unlike her previous allegations, they are unattached to a greater nexus of sequential events.  In no particular order, Mitchell alleges the Postmaster discriminated against her because of her race, sex, age, and disability, and retaliated against her for prior EEO activity when it: (1) removed a 473 Battery Test and Physical Requirement document from her eOPF; (2) placed her on a five-day

break pursuant to all PSE Clerks' contracts; (3) issued her paycheck late due to the five-day break; (4) failed to issue her paycheck for a December 2015 pay period; (5) paid only part of her December 2015 paycheck; (6) changed her Designation Activity Code on her PS Form 50; (7) processed a PS Form 50 relating to her 2002-2008 LWOP status in February 2016; (8) placed her on a fourteen-day suspension after she failed to sign an attendance review following an Investigative Interview in June 2016; (9) denied her Change of Schedule request; (10) changed her service dates on a PS Form 50; and (11) refused her request to buyback her retirement benefits. Doc. No. 97 at 2-7; Ex. H, Att. 10, Doc. No. 119-8. The court addresses each in turn.

### i.    *473 Battery Test and Physical Requirement Document*

First, Mitchell complains that the 473 Battery Test and Physical Requirement Document ("473 Test") was removed from her eOPF, thereby resulting in her "name to be eliminated from the seniority register." Doc. No. 124 at 8. In her EEO Complaint #13-15 proceeding below, Mitchell alleged race, sex, age, and disability discrimination. However, this allegation is entirely absent in her TAC, and only appears as a retaliation claim in her *Response* (Doc. No. 124). Even in Mitchell's *Second Amended Complaint* (Doc. No. 48), any reference to this EEO Complaint is only followed by a retaliation claim. As such, a liberal construction of Mitchell's TAC suggests Mitchell only alleges retaliation; the undersigned will analyze as follows.

A 473 Test produces a score used for "external hiring purposes," and is valid for six years. Ex. E, Att. 3, Doc. No. 119-5 at 6. In the EEO proceeding below, Human Resource Manager Thomas Bunnell explained that "no document has been removed at any time" from Mitchell's eOPF, and even if it had, this document has "no impact on an employee's continued employment," nor is it used for conversion to career purposes. *Id.* Mitchell speculates that (1) this document *did*

exist in her eOPF; and (2) was used as a basis for failing to promote her to career status.  Doc. No.
124 at 8.  However, she produces no evidence for these contentions.

     A retaliation claim requires a showing of an adverse employment action.  *Cooper*, 278 F.
App'x at 320.  An "adverse employment action" is "generally limited to tangible employment
actions that constitute a 'significant change in employment status, such as hiring, firing, failing to
promote, reassignment . . . or a decision causing a significant change in benefits.'"  *Brooks*, 70 F.
Supp. 3d at 835 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  Removing a
document from an employee's personnel file does not constitute an adverse employment action.
*Id.*  Even if the undersigned understood Mitchell's TAC to include other discrimination statutes,
the ADA, ADEA, and Rehabilitation Act all follow the *McDonnell Douglas* framework, and all
require adverse employment actions.

     Moreover, Mitchell has failed to produce any evidence rebutting Bunnell's explanation to
show that this *did* have an effect on her failure to be converted to career status.  Here again, the
lack of evidence cannot sustain Mitchell's complaint at this procedural juncture.  As such, the
undersigned recommends granting summary judgment in favor of the Postmaster on this claim.

       ii.    *Five-day Contractual Break, Paycheck Issues, Schedule Change Denial,
             Service Dates, Retirement Buyback, LWOP, Designation Code Change, and
             14-day suspension*

     During the week of December 7, 2015 through December 13, 2015, the USPS required
Mitchell take a five-day contractual break in service.  *See* Doc. No. 97 at 2-3; Doc. No. 124 at 10-
11; 119 at 16.  Because of this break, Mitchell asserts she was not paid for all hours worked
between December 3, 2015 and December 25, 2015.  Ex. H, Att. 10, Doc. No. 97-8 at 10.
Additionally, Mitchell complains that the USPS changed her Designation Activity Code on her PS
Form 50, placed her on a fourteen-day suspension after she failed to sign an attendance review,

issued a PS Form 50 related to her 2002-2008 LWOP status, and denied her Change of Schedule request. *Id.*; Doc. No. 97 at 2-7. In the parallel EEO complaints below, Mitchell alleged race, sex, disability, and age discrimination, as well as retaliation. *See* Ex. H, Att. 10, Doc. No. 119-8 at 1.

As a threshold matter, the undersigned will not address Mitchell's complaint regarding her 2002-2008 LWOP, even if the processing that took place occurred in February 2016. *See supra* (discussion regarding claim preclusion). Moreover, Mitchell has produced no evidence that this 2016 LWOP processing placed her on a *new* period of leave without pay. Instead, she merely states "[o]n February 16, 2016, the USPS processed a personnel action form 50 effective February 6, 2016[,] placing me in involuntary LWOP." Doc. No. 124 at 11. Further, even if this new LWOP period *did* occur, Mitchell failed to satisfy her burden to show "a causal connection exists between the protected activity and the adverse employment action." *Cooper*, 278 F. App'x at 320. In a conclusory fashion, Mitchell states "I believed the Agency processed this adverse personnel action because of my participation in protected activity." Doc. No. 124 at 12. A belief, however strong, does not satisfy Mitchell's evidentiary burden at this procedural stage. *Auguster*, 249 F.3d at 403 ("[A]n employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief.") (internal citations and quotations omitted). As such, the undersigned recommends granting summary judgment in favor of the Postmaster for this claim as well.

Moving onto Mitchell's contractually obligated five-day break, this event does not constitute an adverse employment action under the meaning of the statute. Doc. No. 124 at 11. Once again, *both* a retaliation allegation *and* the alleged discrimination statutes require an "adverse employment action" take place. *McDonnell Douglas*, 411 U.S. at 802; *Cooper*, 278 F. App'x at 320; *Rascon*, 2022 WL 3578257, at *3. An "adverse employment action" is "generally limited to tangible employment actions that constitute a 'significant change in employment status, such as

hiring, firing, failing to promote, reassignment . . . or a decision causing a significant change in benefits.'" *Brooks*, 70 F. Supp. 3d at 835. This five-day contractual break is not a "significant change in employment status." *Id.* "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same." *Brooks*, 70 F. Supp. 3d at 835 (internal citations and quotations omitted) (alteration in original). Moreover, even if her break constituted an adverse employment action, Mitchell has failed to satisfy her evidentiary burden showing that she "was treated less favorably than other similarly situated employees outside the protected group." *Smith*, 2022 WL 2462364, at *1-2. In other words, she has failed to satisfy her burden showing that this *only* happened to her, or people within her protected group, and was not instead a neutral, generally applicable policy towards all PSE Clerks. Thus, the undersigned recommends granting summary judgment on this claim as well.

Similarly, Mitchell complains that the USPS changed her Designation Activity Code on her PS Form 50 and denied her request for a schedule change. In the parallel EEO proceeding below, the Postmaster of the Euless Post Office, Julian Caldwell, testified that this change in her Designation Activity Code occurred when she was promoted to a full-time employee. Ex. H, Att. 10, Doc. No. 119-8 at 7. Mitchell has produced no evidence that this code means something different. Moreover, even if it did, she has not alleged, nor offered evidence to prove, that this code change constituted a "significant change" in her employment status. *Brooks*, 70 F. Supp. 3d at 835. The same is true for the USPS's denial of her schedule change request. *Id.*; Ex. H, Att. 10, Doc. No. 119-8 at 8.

Next, Mitchell complained that the USPS changed her dates of service and refused to allow her to buyback her retirement benefits. Doc. No. 97 at 5; Ex. H, Att. 10, Doc. No. 119-8 at 8. While a "significant change in benefits" constitutes an adverse employment action, the Fifth

Circuit has not addressed the failure to buy back retirement benefits. *Brooks*, 70 F. Supp. 3d at 835. However, even if this *did* constitute an adverse employment action, Mitchell has failed to produce evidence showing that the USPS's reasons for this failure, namely, that they were already "in fund" and "the period of service was not refunded," were pretextual. Ex. H, Att. 10, Doc. No. 119-8 at 8. Moreover, Mitchell has not explained how she was harmed by a change in her dates of service, as in the EEO proceeding below, Caldwell explained this change happened when she went full-time. Ex. H, Att. 10, Doc. No. 119-8 at 7. Mitchell has not even alleged this was pretextual. Thus, these two claims should be dismissed as well.

Mitchell next complains that she was placed on a fourteen-day suspension after she failed to sign an attendance review. *Id.* In 2016, Mitchell requested leave, and was denied twice. *Id.* Once she did not report for work, her Post Office marked her Absent Without Official Leave ("AWOL") and requested she sign an attendance review at an Investigative Interview. *Id.* Mitchell did not comply, and the USPS thus placed her on a fourteen-day suspension.

A fourteen-day suspension constitutes an adverse employment action. *See LeMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) ("[A] two-day suspension without pay might have dissuaded a reasonable employee from making a charge of discrimination.") (citation omitted). In *LeMaire*, an employee reported a supervisor for sexually harassing her and another employee. *Id.* at 385. In retaliation, two weeks after filing a grievance, she was suspended for two days without pay. *Id.* The Fifth Circuit held this two-day suspension constituted an adverse employment action, noting the temporal proximity between the adverse action and the retaliation. *Id.*

Here, Mitchell's two-week suspension may constitute an adverse employment action.[14] However, she cannot show a causal connection exists between the protected activity and the suspension. *Id.* Mitchell's most recent EEO complaint — the basis for her protected activity — was initiated on December 22, 2015 and filed on February 9, 2016. Ex. H, Att. 2, Doc. No. 119-8. On June 23, 2016, the USPS placed her on a fourteen-day suspension. *Id.*, Att. 9. The Fifth Circuit has held that four months is insufficient to establish a causal connection. *See Yancy v. U.S. Airways, Inc.*, 469 F. App'x 339, 344 (5th Cir. 2012) ("Yancy's suspension occurred almost four months after her second EEOC charge . . .[w]ith such a delay, the temporal proximity of the events is insufficient to establish Yancy's *prima facie* case alone.") (citation omitted). "Accordingly, an inference that [the USPS] decided to suspend [Mitchell] due to her protected activities would be 'tenuous,' at best." *Id.* As such, in the absence of further causation evidence, temporal proximity cannot suffice Mitchell's retaliation claim here. Thus, the undersigned recommends granting summary judgment in favor of the Postmaster for this claim.

Lastly, Mitchell complains that the USPS retaliated against her when it delayed paying her. Doc. No. 124 at 11. In her *Response* (Doc. No. 124), Mitchell states "on December 21, 2015, I became aware that Management failed to provide me with a check for [Pay Period] 26/15 in reprisal for participation in protected activity." *Id.* In her next sentence, though, she states "[o]n December 24, 2015, Postmaster J. Caldwell gave me my payroll check." *Id.* She continues, stating similar delays with other checks in other pay periods. *Id.* These delays range from three days to two weeks. *Id.*

While a loss or change in "job duties, compensation, or benefits" constitutes adverse employment actions, *Brooks*, 70 F. Supp. 3d at 835, a delay in receiving one's paycheck fails to

---

[14] Mitchell has not alleged, nor provided evidence, regarding whether this suspension was with or without pay. Regardless, the undersigned will discuss this claim as if the USPS suspended her without pay.

57

constitute an adverse employment action, and is instead, a "minor inconvenience" not subject to the discrimination statutes. *Harris v. Fort Bend ISD*, No. H-09-2984, 2011 WL 1100235, at *10 (S.D. Tex. Mar. 22, 2011) (delay in paycheck not adverse employment action); *see also Mylett v. City of Corpus Christi*, 97 F.App'x 473, 475 (5th Cir. May 4, 2004) ("A delay in promotion is not an adverse employment action where any increase in pay . . .[is] awarded retroactively."). Thus, because these claims fail as a matter of law, the undersigned recommends granting summary judgment in favor of the Postmaster here as well.

## IV.   Recommendation

For the reasons stated above, the undersigned recommends granting Defendant Postmaster General's *Motion to Dismiss, or Alternatively, Motion for Summary Judgment* (Doc. No. 119).

## V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds

of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

      SIGNED this 24th day of October, 2022.

Zack Hawthorn
United States Magistrate Judge